IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JEFFREY WHALEY,<br><br>          Plaintiff,<br><br>vs.<br><br>STATE OF ALASKA, DEPT. OF LAW and SAFARILAND, LLC,<br><br>          Defendants. | Case No. 4:21-cv-00006-JMK<br><br>**ORDER** |

## I. MOTION PRESENTED

Before the Court at Docket 30 is a motion for summary judgment filed by Defendant Safariland, LLC ("Safariland"). Plaintiff Jeffrey Whaley ("Plaintiff") responded at Docket 36. Safariland replied at Docket 45. Oral argument was not requested and would not be of assistance to the Court.

## II. BACKGROUND

This action stems from efforts made by the Alaska State Troopers ("AST") and the Fairbanks Police Department to force Plaintiff from his vehicle on October 18, 2018, after a prolonged standoff.[1] Earlier that evening, AST dispatch had received a report

---

[1] Docket 1-1 at ¶¶ 4–5.

about a truck parked outside of a convenience store on Badger Road in Fairbanks, Alaska, with a man, later identified as Plaintiff, slumped over in his seat and an open bottle of beer in the center console.[2] An AST officer responded to the call and observed Plaintiff passed out in his seat with the keys in the ignition and a pistol on his lap.[3] The officer received information from dispatch identifying Plaintiff as the registered owner of the vehicle and notifying him that Plaintiff was a convicted felon who had been flagged as someone hostile to law enforcement.[4]

The trooper waited for back up law enforcement to arrive before efforts were made to rouse Plaintiff with a loudspeaker.[5] Once awake, Plaintiff was directed to exit the vehicle. Plaintiff acknowledged and clearly understood the directive but defiantly and profanely objected to the legality of his detainment and refused to comply.[6] More law enforcement units were called to the scene, including those equipped with armored vehicles and less lethal detainment methods. An AST negotiator also arrived on the scene.[7]

Plaintiff was belligerent when communicating with the negotiator. He shouted about his detainment and aggressively yelled profanities, threats, and insults at the officers.[8] At some points during his interaction with the negotiator, he would stand up and

---

[2] Docket 30-2 at 1, 6 (Exhibit B, AST Incident Report No. 18073655).
[3] *Id.* at 6.
[4] *Id.*
[5] *Id.*
[6] *Id.*; *see generally* Exhibit A (video of event filed with court).
[7] Docket 30-2 at 1, 6.
[8] *See generally* Exhibit A.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*  Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30  Page 2

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 2 of 13

lean out of the vehicle.⁹ He said that law enforcement would have to kill him to get him out of the truck and repeatedly talked about getting shot and killed.¹⁰

After about an hour of trying to get Plaintiff to exit the truck, officers began deploying chemical agents around and into the truck through an open window in the back of the cab. Despite clouds of gas from multiple chemical agents deployed in his vicinity, Plaintiff refused to comply with law enforcement demands. He suffered some observable effects from the chemicals, such as coughing and wiping eyes, and he would at times open the door and lean out of the truck as if he were going to exit, but he would again become defiant and shut himself back in the truck.¹¹

After about thirteen rounds of chemical agents with no results, law enforcement decided to deploy more intrusive Stinger Grenades.¹² Stinger Grenades are made and sold by Safariland and are described as "combination Less Lethal Impact Munitions and Distraction Device[s]" that deliver up to four stimuli for psychological and physiological effect, namely rubber pellets, light, sound, and a chemical agent.¹³ Troopers introduced one into the vehicle with no effect and quickly followed it with a second one. The second one also did not prompt Plaintiff to exit the vehicle. Rather, Plaintiff leaned his head out the driver's side window to shout that all law enforcement needed to back

---

⁹ Exhibit A at 02:00.
¹⁰ *Id.* at 01:10–01:16, 04:29–04:45, 05:34–06:30, 17:48–18:00, 20:00–20:30; Docket 30-2 at 1.
¹¹ Exhibit A at 19:20–19:45, 43:27–45:02, 46:40–58:50.
¹² *See* Docket 31 at 3, n.12 (listing various times in the video of the incident where chemical agents were introduced in the cab of the truck); Docket 30-2 at 8, 14.
¹³ Docket 30-4 (Exhibit D, Stinger Grenade Specifications Sheet).

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*     Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30                               Page 3

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 3 of 13

away or there would be shooting and they would have to kill him.[14]  He began counting.[15]  At that point, troopers tossed a third Stinger Grenade through the cab's back window.[16]  It is unclear from the video where the grenade landed inside the truck cab, but Plaintiff testified that the grenade landed on him and rolled between his legs.[17]  After a few moments, Plaintiff began screaming and exited the truck in flames from his waist down to his thighs.[18]  Troopers extinguished the fire while arresting him.  Emergency medical personnel were present and transported him to Fairbanks Memorial Hospital.  He suffered third degree burns that eventually were treated at a medical facility in Seattle.[19]

In his complaint, in addition to but distinct from the claims against the State of Alaska, Plaintiff raises a variety of claims against Safariland as the manufacturer and supplier of the Stinger Grenades.  These include product liability claims, an Unfair Trade Practices Act claim, and a negligent training and supervision claim.  Safariland now seeks summary judgment in its favor.  In his response brief, Plaintiff concedes that his Unfair Trade Practices Act claim and his negligent training and supervision claim are without legal merit, but maintains that his claim for product liability based on defective warnings is valid and supported with sufficient evidence to withstand summary judgment.

---

[14] Exhibit A at 01:08:49–01:09:50; Docket 30-2 at 7, 9.
[15] Exhibit A at 01:09:05.
[16] *Id.* at 1:10:05.
[17] Docket 30-3 at 6 (Exhibit C, Deposition of Jeffrey Whaley).
[18] Exhibit A at 1:10:05–1:10:41.
[19] Docket 30-2 at 1.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*   Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30   Page 4

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 4 of 13

### III. LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[21] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[23]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[24] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[25] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[26] All evidence presented by the non-movant must be believed for purposes of summary judgment and all

---

[20] Fed. R. Civ. P. 56(a).
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[22] *Id.*
[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[24] *Id.* at 323.
[25] *Id.*
[26] *Id.* at 323–24.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*  Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30  Page 5

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 5 of 13

justifiable inferences must be drawn in favor of the non-movant.[27] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[28]

## IV. DISCUSSION

As noted above, the parties have narrowed the claims against Safariland down to one premised on product liability. Plaintiff contends that Safariland's Stinger Grenades are defective. "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."[29] "A product may be defective because of a manufacturing defect, a defective design, or a failure to contain adequate warnings."[30] The defect must be a proximate cause of the plaintiff's injuries.[31] While the complaint here asserts all three types of defects, Plaintiff provides no evidence in support of a manufacturing defect or design defect. Rather, the evidence in the record confirms that the Stinger Grenades used against Plaintiff functioned as designed and as the users expected.[32]

---

[27] *Anderson*, 477 U.S. at 255.
[28] *Id.* at 248–49.
[29] *Clary v. Fifth Ave. Chrysler Center*, 454 P.2d 244, 247 (Alaska 1969) (quoting *Greenman v. Yuba Power Products, Inc.*, 377 P.2d 897, 900 (Cal. 1962)).
[30] *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194 (Alaska 1992).
[31] *Prince v. Parachutes, Inc.*, 685 P.2d 83, 87 (Alaska 1984); *see also Specter v. Texas Turbine Conversions, Inc.*, 3:17-cv-00194-TMB, 2021 WL 243776, at * 4 (D. Alaska Jan. 25, 2021).
[32] Docket 45-1 at 9, 10, 49 (Exhibit H, Deposition of Deputy Fire Marshall Kyle Carrington); Docket 45-2 at 2 (Exhibit I, Deposition of Trooper Barry Cebulski); Docket 30-7 at 1 (Exhibit G, Expert Report of Dave DuBay).

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*      Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30      Page 6

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 6 of 13

Indeed, in his response briefing, Plaintiff only presents an argument in opposition to summary judgment on the issue of inadequate warnings. He asserts that Safariland "did not reasonably restrict, limit or warn regarding the use of its pyrotechnic Stinger grenades indoors where flammable material was present."[33]

Under a failure to warn theory of liability, a product is defective if it poses a risk of injury when used in a reasonably foreseeable manner but is marketed without adequate warnings of that risk.[34] Stated differently, a defective warning claim is based on the notion that, absent a warning about the risks involved in using a product or information about minimizing or avoiding harm from such risks, the product is not suitable or safe for its intended purpose. A warning is adequate if it "1) clearly indicate[s] the scope of the risk or danger posed by the product; 2) reasonably communicate[s] the extent or seriousness of harm that could result from the risk or danger; and 3) [is] conveyed in such a manner as to alert the reasonably prudent person."[35] However, a warning need not encompass all "hazards and dangers that would be readily recognized by the ordinary user of the product."[36]

It is undisputed that Safariland's Stinger Grenades are classified as pyrotechnic devices and pose a risk of fire when deployed. They have a rubber casing and a fuse that initiates with an intense and rapid flash to create a blast that sends the enclosed

---

[33] Docket 36 at 1.
[34] *Shanks*, 835 P.2d at 1199–1200.
[35] *Id.* at 1200.
[36] *Prince*, 685 P.2d at 88.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*  Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30  Page 7

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 7 of 13

pellets and chemicals in all directions. While there is no burning flame involved with initiating the fuse, there is a bright flash that goes off for a few milliseconds that has fire producing potential.[37] Stinger Grenades are considered "less lethal" devices and are specified for use "in tactical deployment situations" including "high-risk warrant service, hostage rescue, and the arrest of potentially violent subjects."[38] Safariland markets the devices as commonly used in correctional facilities against non-compliant or riotous inmates or when needed for disorderly crowds.[39]

Given these purposes, the devices are regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives and are not available for sale or possession by the public.[40] They are sold only to law enforcement, corrections, or military agencies and only after it can be demonstrated that the agency's personnel have completed a training program.[41] The instructions provided with Stinger Grenades state in bold lettering that they are only to be used by law enforcement, corrections, or military personnel after completion of a training program.[42] The product's specifications sheet contains that same limitation.[43] Here, it is undisputed that the troopers involved in the decision to use and deploy Stinger Grenades had received the requisite training.[44]

---

[37] Docket 30-5 at 3 (Exhibit E, Deposition of Dave DuBay).
[38] Docket 30-4.
[39] *Id.*
[40] Docket 30-6 (Exhibit F, Stinger Grenade Instructions Sheet).
[41] Docket 30-7.
[42] Docket 30-6.
[43] Docket 30-4.
[44] Docket 45-1 at 49; Docket 36-6 at 5 (Exhibit 6, Deposition of Trooper Barry Cebulski).

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*     Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30     Page 8

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 8 of 13

The instruction and specifications sheets provided to purchasing agencies warn of the risk of fire. The instructions state that a Stinger Grenade "contains explosive composition for disseminating powder agent and/or rubber pellets and may cause serious injury or death if misused."[45] It instructs users that the "location of deployment . . . should be free from combustible material."[46] The specifications sheet for the Stinger Grenades states that these grenades are "most widely used as a crowd management tool by law enforcement and corrections in indoor and outdoor operations."[47] It warns, however, that "as with any pyrotechnic device, firefighting equipment should be available."[48] At the bottom of the specifications sheet are two symbols identically sized and shaped—one indicates the grenades can be used both indoors and outdoors and one indicates they are explosives.[49] There is also a picture of the product, which shows that it is in fact grenade-like in shape. The specification sheet warns that improper use of the grenades can result in death or serious bodily injury and states that the devices are "generally reserved as a last selection" when other methods have not resolved the "disorder."[50]

Based on this evidence, there can be no reasonable dispute as to the adequacy of the warnings accompanying Safariland's Stinger Grenades. There simply is no evidence from which to infer that those warnings do not sufficiently communicate the risk of fire. The instructions and the specifications sheet warn that a Stinger Grenade is considered an

---

[45] Docket 30-6.
[46] Id.
[47] Docket 30-4.
[48] Id.
[49] Id.
[50] Id.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*  Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30  Page 9

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 9 of 13

explosive product, with the specifications sheet unequivocally signaling that the device is in fact pyrotechnic and explosive. All of these warnings would alert a reasonably prudent person about the risk of fire, let alone a law enforcement officer who had been trained on the proper use and dangers of such devices.

Plaintiff argues that the warnings are not specific enough to adequately minimize the risk of fire. He asserts that there is at least a disputed issue of fact as to whether Safariland should warn users about the higher risk of fire when these grenades are deployed in tight spaces where flammable material is present. He argues that even though there are warnings about the grenades being pyrotechnic, it is misleading to indicate that they can be used indoors. In support of his position that the warnings are confusing, he relies on the testimony of Trooper Cebulski, who deployed the Stinger Grenades inside of Plaintiff's truck. He stated that because Stinger Grenades are rated for indoor use, he did not think they were explosive.[51] Plaintiff also cites the testimony of Trooper Carrington, the Deputy Fire Marshall on the scene that evening, who acknowledged that the grenades are pyrotechnic but nonetheless believed they were appropriate to use in the situation presented because they are marketed for indoor use.[52]

The Court is unpersuaded that there is a disputed issue for the jury on the specificity of Safariland's warnings. As noted above, the risk of fire is clearly communicated. While Trooper Cebulski may not have understood that fact, those in charge

---

[51] Docket 36-6 at 11–12, 15.
[52] Docket 36-1 at 10 (Exhibit 1, Deposition of Deputy Fire Marshall Kyle Carrington).

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*   Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30   Page 10

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 10 of 13

of making the decision to use Stinger Grenades clearly did; they had fire-fighting equipment available as instructed and immediately used it when Plaintiff emerged from the vehicle aflame. One trooper's incorrect belief that the grenades are not pyrotechnic because they are marketed for indoor use does not create an issue of disputed fact as to the need for more specificity.[53] The warnings also comply with all applicable standards and regulations,[54] which suggests a more detailed warning would not be typical for such devices.[55]

Moreover, the evidence presented shows Safariland does in fact signal to purchasing agencies that indoor use of its Stinger Grenades is to be limited or at least well-considered. The specifications sheet suggests that indoor usage should be tactical and generally reserved as a last resort method. It specifies the type of indoor locations where these devices are most commonly used—in correctional facilities where there is riotous or non-compliant conduct. It warns that while the grenades are widely used for crowd management both indoors and outdoors, they are nonetheless pyrotechnic devices that should be used only if fire-fighting equipment is available. The instructions state that the location where the grenade is deployed "should be free from combustible material."[56] All of these warnings are reasonably specific enough to warn law enforcement personnel that

---

[53] *See Prince*, 685 P.2d at 88 (noting "that it is the knowledge of the ordinary user of the product which is relevant to the duty to warn rather than what the actual user in the case actually knew").
[54] Docket 30-7 at 2.
[55] 63A Am. Jur. 2d Products Liability § 999.
[56] Docket 30-6.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*  Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30  Page 11

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 11 of 13

use of Stinger Grenades indoors is not without risks and that users must make decisions as to when and where these devices should be deployed.

Moreover, the increased risk of introducing a pyrotechnic device into a confined space with flammable material is indisputably obvious and generally known, negating any possibility that the warning is defective.[57] Even if that increased danger would not be obvious to the ordinary public, the troopers' training and experience are relevant.[58] The record shows that the requisite training includes discussion of fire risk when used around flammable materials.[59] Thus, the troopers who were trained and notified of the dangers should have known that while these products can be used indoors, there nonetheless is a risk of fire that increases with the presence of flammable materials.[60] As a general proposition under products liability law, when a product is intended for use only by qualified personnel and the danger in question is expected to be known by such personnel, there is, as a matter of law, no defective warning.[61] Safariland cannot reasonably be held liable for failing to warn trained law enforcement officers about all the scenarios where a pyrotechnic device is more likely to start a fire.

Given the various warnings provided, the generally known risks associated with pyrotechnic devices, the troopers' training, and the product's compliance with applicable standards and regulations, the warning accompanying Safariland's Stinger

---

[57] *Prince*, 685 P.2d at 88.
[58] 63A Am. Jur. 2d Products Liability § 986.
[59] Docket 30-5 at 6.
[60] *Id.*
[61] 63A Am. Jur. 2d Products Liability § 985.

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*     Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30     Page 12

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 12 of 13

Grenades cannot reasonably be deemed inadequate and thus Safariland cannot be held liable for Plaintiff's injuries.

## V. CONCLUSION

Based on the preceding discussion, Safariland's motion for summary judgment at Docket 30 is GRANTED. Plaintiff's complaint as it pertains to Safariland is dismissed with prejudice.

IT IS SO ORDERED this 6th day of January, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Whaley v. State of Alaska, Dept. of Law and Safariland, LLC*  Case No. 4:21-cv-00006-JMK
Order Re Safariland's Motion for Summary Judgment at Docket 30  Page 13

Case 4:21-cv-00006-JMK   Document 57   Filed 01/06/23   Page 13 of 13