IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JEFFREY WHALEY,<br><br>             Plaintiff,<br><br>vs.<br><br>STATE OF ALASKA, DEPT. OF LAW, and SAFARILAND, LLC,<br><br>             Defendants. | Case No. 4:21-cv-00006-JMK<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Before the Court at Docket 46 is a motion for summary judgment filed by Defendant State of Alaska, Department of Law (the "State"). Plaintiff Jeffrey Whaley responded at Docket 50. The State replied at Docket 55. For the reasons below, the motion is **GRANTED.**

## I. BACKGROUND

This action stems from efforts made by the Alaska State Troopers ("AST" or "troopers") to remove Plaintiff from his vehicle on October 18, 2018, after a prolonged standoff. Earlier that evening, AST dispatch had received a report about a truck parked outside of a convenience store on Badger Road in Fairbanks, Alaska, with a man, later identified as Plaintiff, slumped over in his seat, and an open bottle of beer in the center

console.[1] A trooper responded to the call and observed Plaintiff passed out in his seat with the keys in the ignition and a pistol on his lap.[2] The trooper received information from dispatch identifying Plaintiff as the registered owner of the vehicle and a convicted felon who had been flagged as someone hostile to law enforcement.[3]

After back-up law enforcement arrived, troopers attempted to rouse Plaintiff with a loudspeaker.[4] Once awake, Plaintiff was directed to exit the vehicle. Plaintiff acknowledged and understood the directive but defiantly and profanely objected to the legality of his detainment and refused to comply.[5] The troopers explained that they had seen a gun in the cab of the truck and that they needed Plaintiff to keep his hands visible.[6] Plaintiff refused to comply with this directive. He grabbed a beer from his center console and proceeded to drink it in front of the officers after declaring he was "getting drunk."[7] More law enforcement units were called to the scene, including those equipped with armored vehicles. An AST negotiator also arrived on the scene.[8]

Plaintiff was belligerent when communicating with the negotiator. He shouted about his detainment and yelled profanities, threats, and insults at the officers.[9] At certain points during his interaction with the negotiator, he would stand up and lean out of

---

[1] Docket 47-1 at 1, 6.
[2] *Id.* at 6.
[3] *Id.*
[4] *Id.*
[5] *Id.*; *see generally* Docket 47-4 (video of event conventionally filed with court).
[6] Docket 47-2 at 2, 3.
[7] *Id.* at 8; Docket 47-1 at 7.
[8] Docket 47-1 at 1, 7.
[9] *See generally* Docket 47-4.

*Whaley v. State of Alaska, Dept. of Law*　　　　　　　　　　　　　　　　　　Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment　　　　　　　　　　　Page 2
Case 4:21-cv-00006-JMK　　Document 64　　Filed 05/22/23　　Page 2 of 14

the vehicle.[10]  He said that law enforcement would have to kill him to get him out of the truck and repeatedly talked about getting shot and killed.[11]  At one point he declared he was "prepared to kill them."[12]  The troopers continually reassured him that they did not want to shoot him and that they wanted him to step out of the vehicle where they could make sure he did not have a gun within reach.[13]

After about an hour of trying to get Plaintiff to exit the truck, officers began deploying chemical agents around and into the truck through an open window in the back of the cab.  Despite clouds of gas from multiple chemical agents deployed in his vicinity, Plaintiff refused to comply with law enforcement's demands.  He suffered some observable effects from the chemicals, such as coughing and wiping eyes.  At times, he would open the door and lean out of the truck as if he were going to exit, but then he would become defiant and shut himself back in the truck.[14]

After many rounds of chemical agents with no results, law enforcement decided to deploy more intrusive Stinger Grenades.[15]  Stinger Grenades are made and sold by Safariland and are described as "combination Less Lethal Impact Munitions and Distraction Device[s]" that deliver up to four stimuli for psychological and physiological effect, namely rubber pellets, light, sound, and a chemical agent.[16]  It is undisputed that Safariland's Stinger Grenades are classified as pyrotechnic devices and pose a risk of fire

---

[10] *Id*. at 02:00.
[11] *Id.* at 01:10–01:16, 05:34–06:30, 17:48–18:00, 20:00–20:30.
[12] Docket 47-2 at 14–15.
[13] *See, e.g.,* Docket 47-2 at 2, 5, 6, 8, 10, 14, 16, 17.
[14] Docket 47-4 at 19:20–19:45, 43:27–45:02, 46:40–58:50.
[15] Docket 47-1 at 8, 14.
[16] Docket 47-9.

*Whaley v. State of Alaska, Dept. of Law*　　　　　　　　　　　　　　　　　　　　Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment　　　　　　　　　　　　　　　　Page 3
Case 4:21-cv-00006-JMK　　Document 64　　Filed 05/22/23　　Page 3 of 14

when deployed. While there is no burning flame involved with initiating the fuse, there is a bright flash that goes off for a few milliseconds that has fire-producing potential.[17] Stinger Grenades are considered "less lethal" devices and are specified for use "in tactical deployment situations" including "high-risk warrant service, hostage rescue, and the arrest of potentially violent subjects."[18] The specifications sheet for the Stinger Grenades states that these grenades are "most widely used as a crowd management tool by law enforcement and corrections in indoor and outdoor operations."[19] It warns, however, that "as with any pyrotechnic device, firefighting equipment should be available."[20] At the bottom of the specifications sheet are two symbols identically sized and shaped—one that indicates the grenades can be used both indoors and outdoors and one indicates that they are explosives.[21] The specification sheet warns that improper use of the grenades can result in death or serious bodily injury and states that the devices are "generally reserved as a last selection" when other methods have not resolved the "disorder."[22] The devices are only sold to law enforcement, corrections, or military agencies and only after the agency's personnel have completed a training program.[23] Here, it is undisputed that the officers involved in the decision to use and deploy Stinger Grenades had received the required training.[24]

---

[17] Docket 33-1 at 3.
[18] Docket 47-9.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*; *see also* Docket 30-7 at 1.
[24] Docket 45-1 at 49; Docket 36-6 at 5.

*Whaley v. State of Alaska, Dept. of Law*  Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment  Page 4
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 4 of 14

Troopers introduced one Stinger Grenade into the vehicle with no effect, and quickly followed it with a second. The second Stinger Grenade also did not prompt Plaintiff to exit the vehicle. Rather, Plaintiff leaned his head out the driver's side window to shout that all law enforcement needed to back away or there would be shooting and they would have to kill him and that he was ready to die.[25] He began counting.[26] At that point, troopers tossed a third Stinger Grenade through the cab's back window.[27] It is unclear from the video where the grenade landed inside the truck cab, but Plaintiff testified that the grenade landed on him and rolled between his legs.[28] After a few moments, Plaintiff began screaming and exited the truck in flames from his waist down to his thighs.[29] Troopers extinguished the fire while arresting him. Emergency medical personnel were present and transported him to Fairbanks Memorial Hospital. He suffered third degree burns that were eventually treated at a medical facility in Seattle.[30]

Plaintiff filed suit in Alaska Superior Court against the State and the manufacturer of the Stinger Grenades, Defendant Safariland, LLC.[31] The State removed the lawsuit to this Court, invoking federal diversity jurisdiction under 28 U.S.C. § 1332.[32] The claims against Safariland were dismissed at Docket 57. Only the state law tort claims based on the troopers' conduct remain. Plaintiff alleges that the troopers involved "knew

---

[25] Docket 47-4 at 01:08:49–01:09:50; Docket 47-1 at 1, 7, 9, 11, 13; Docket 47-2 at 41, 42.
[26] Docket 47-4 at 01:09:05.
[27] *Id*. at 1:10:05.
[28] Docket 47-6 at 6.
[29] Docket 47-4 at 1:10:05–1:10:41.
[30] Docket 47-1 at 1.
[31] Docket 1-1.
[32] Docket 1.

*Whaley v. State of Alaska, Dept. of Law*  Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment  Page 5
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 5 of 14

or should have known that yelling at a startled man who had been sleeping in a car was an unreasonable escalation of force" and that "they knew or should have known . . . that [he] was having mental difficulty processing the circumstances."[33] He alleges that they "knew or should have known that throwing a Stinger [G]renade toward a man inside a vehicle was likely to cause unreasonable harm."[34] He alleges that the troopers' escalation of the confrontation and use of Stinger Grenades amounted to "negligence and/or gross negligence" and "recklessness and/or maliciousness."[35] In the Amended Complaint, Plaintiff does not name the individual troopers; instead, he names only the State based on its vicarious liability for the troopers' negligent conduct.[36] He also raises a separate claim against the State for negligent training and/or supervision.[37] The State now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[38] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[39] Ultimately, "summary judgment will not lie if the . . . evidence is such that

---

[33] Docket 6-4 ¶¶ 36, 37.
[34] Id. ¶ 38.
[35] Id. ¶ 39.
[36] Id. ¶ 4.
[37] Id. ¶ 41.
[38] Fed. R. Civ. P. 56(a).
[39] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

*Whaley v. State of Alaska, Dept. of Law* Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment Page 6
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 6 of 14

a reasonable jury could return a verdict for the nonmoving party."[40]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[41]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[42]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of a genuine dispute as to any material fact.[43]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[44]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[45]  However, the nonmoving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[46]

### III. DISCUSSION

At the outset, the Court acknowledges that Plaintiff's claims are ill-defined and difficult to parse, as is the briefing on summary judgment.  Plaintiff alleges that the

---

[40] *Id.*
[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[42] *Id.* at 323.
[43] *Id.*
[44] *Id.* at 323–24.
[45] *Anderson*, 477 U.S. at 255.
[46] *Id.* at 248–49.

*Whaley v. State of Alaska, Dept. of Law*  Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment  Page 7
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 7 of 14

troopers' conduct was an "unreasonable escalation of force."[47] This claim does not rely on federal or state constitutional law, nor does the Amended Complaint cite Alaska Stat. § 12.25.070, which makes a peace officer's use of excessive restraint a statutory violation under Alaska law.[48] Instead, the claims outlined in the Amended Complaint appear to rest entirely on common law negligence grounds: a direct claim for negligent training and supervision, a vicarious liability claim based on the troopers' negligent use of the Stinger Grenades, and a vicarious liability claim based on the troopers' negligent disregard of Plaintiff's mental health crisis.[49]

The State argues that sovereign immunity bars Plaintiff's claims.[50] Plaintiff responds that the State has waived its sovereign immunity for negligence claims under Alaska Stat. § 09.50.250.[51] While Plaintiff does not use the terms assault, battery, or

---

[47] Docket 6-4 ¶ 36.
[48] *See generally* Docket 6-4; *but see* Docket 50 at 1 (citing Alaska Stat. § 12.25.070 to establish duty for negligence claim).
[49] Docket 6-4 ¶¶ 35–41; *see also* Docket 50 at 2 ("Mr. Whaley did not sue individual officers, nor did he allege § 1984 [sic] claims for violation of Constitutional rights.").
[50] The State also argues that Plaintiff's negligence claim fails as a matter of law because the troopers acted reasonably when arresting him. Docket 47 at 17–23. The State's briefing on this topic assumes that Plaintiff advances both intentional tort and negligence claims based on the troopers' conduct. *See id.* at 17 (stating both that "Mr. Whaley's alleged assault is based on the allegation that the Troopers who stopped him used inappropriate force during his detainment and arrest" and "[h]is claim of negligence fails as a matter of law because the Troopers did not breach the duty of care when they used appropriate and reasonable force to detain and arrest him"). Because the same conduct cannot be both intentional and negligent, and because the State argues that Plaintiff's entire claim is a veiled excessive force claim, the Court interprets the State's briefing as arguing in the alternative if the Court finds that it is not immune. *See* Docket 55 at 2 ("Whether admitted or not, Mr. Whaley's claim regarding excessive force, and the use of Stinger Grenades, is an intentional tort claim for assault and battery, for which DPS has absolute immunity and otherwise fails as a matter of law."). Because the Court finds that Plaintiff's claim is barred by sovereign immunity, it does not address the State's alternative argument that the troopers acted reasonably.
[51] Docket 50 at 3–5.

*Whaley v. State of Alaska, Dept. of Law*     Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment     Page 8
Case 4:21-cv-00006-JMK    Document 64    Filed 05/22/23    Page 8 of 14

excessive force in the Amended Complaint,[52] he alleges that the troopers deployed Stinger Grenades into his truck in an effort to detain him.[53] The State argues that "this allegation is, in substance, an assertion for the tort of assault and battery because it relates to alleged improper use of force against Mr. Whaley by the troopers."[54] As such, the State asserts its "statutory" and "absolute" immunity under Alaska Stat. § 09.50.250(3), which retains its immunity from claims that arise out of an employee's assault and battery.[55] The State argues that Alaska Stat. § 09.50.250 insulates it from Plaintiff's claims, even if styled as negligence, because they arise out of the troopers' intentional conduct in deploying Stinger Grenades during the arrest.[56]

---

[52] *But see id.* at 5 (Plaintiff arguing that there is a clearly established right to be "free from excessive force" during arrest).
[53] Docket 6-4 ¶¶ 7–17, 36–40.
[54] Docket 47 at 16.
[55] *See* Alaska Stat. § 09.50.250(3). The Court notes that the State does not trace its immunity to the Eleventh Amendment. Indeed, the State appears to concede that if Plaintiff advanced a valid claim for negligence, the State would have waived any immunity before this Court. Docket 47 at 17–23 (arguing that any negligence claim would fail as a matter of law); *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) (holding that state waived its Eleventh Amendment immunity by removing state law claims to federal court after statutorily waiving immunity for those claims in state court proceeding). Although the Ninth Circuit has held that "when a State removes a case it invokes the jurisdiction of the federal district court and thereby waives the sovereign immunity *from suit* it would enjoy in state court," it has not held that removing a case to federal court waives a state's underlying immunity *from liability*. *Redgrave v. Ducey*, 953 F.3d 1123, 1125 (9th Cir. 2020); *see also Buffin v. California*, 23 F.4th 951, 956 n.1 (9th Cir. 2022) (quoting *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006)) ("The phrase Eleventh Amendment immunity is a 'convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.'"); *Taylor v. Cnty. of Pima*, 913 F.3d 930, 934 (9th Cir. 2019) (differentiating between a state's immunity from suit in federal court and its underlying immunity from liability); *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1019 n.11 (9th Cir. 2016) ("We have since observed that the question whether *Lapides's* rule applies when a State defendant has not consented to suit in its own courts remains unresolved in this circuit."). Because Plaintiff does not raise the argument that the State waived its immunity from liability by removal, the Court does not address it.
[56] Docket 47 at 16–17, 24–26; Docket 55 at 9–10.

*Whaley v. State of Alaska, Dept. of Law*  Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment  Page 9
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 9 of 14

Plaintiff reiterates that his claims sound in negligence and that "[t]he State waived its sovereign immunity for tort claims of negligence."[57] Plaintiff argues that the troopers' use of the Stinger Grenades was not an assault or battery, presumably because "the [t]roopers did not actually realize" that the Stinger Grenade was a pyrotechnic device.[58] Without cogent briefing on this topic, the Court understands Plaintiff's theory to be that the troopers did not actually know, but should have known, that throwing the Stinger Grenades in Plaintiff's vehicle "constituted deadly force" and was contrary to AST policy. While Plaintiff seemingly acknowledges that the troopers intended to use the Stinger Grenades to effectuate arrest, he states that "the [t]roopers were not intending to deploy deadly force" in doing so.[59]

The Court finds that the State is immune from Plaintiff's claims. Plaintiff alleges that the State is vicariously liable for the troopers' "unreasonable escalation of force"[60] and that the State is directly liable for failing to properly train the troopers on the use of the Stinger Grenades and the use of force during arrest.[61] In both instances, Plaintiff advances what is plainly a state law claim for excessive force veiled in the language of negligence. When interpreting Alaska Stat. § 09.50.250,

> regardless of the label that a claimant attaches to her or her tort, [Alaska courts] will look first to the substance of the claim. If the substance of the claim shows that it falls within the intentional tort exceptions, the courts will ignore this label and

---

[57] Docket 50 at 2. The Court notes that Plaintiff's response predominantly argues that the individual troopers, if named, would not be entitled to qualified immunity, thus making the State vicariously liable for their conduct. *Id*. at 3–5.
[58] Docket 50 at 3.
[59] *Id*. at 6.
[60] Docket 6-4 ¶ 36.
[61] *Id*. ¶ 41.

*Whaley v. State of Alaska, Dept. of Law*　　　　　　　　　　　　　　　　　　　　　Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment　　　　　　　　　　　　　　　　Page 10
Case 4:21-cv-00006-JMK　　Document 64　　Filed 05/22/23　　Page 10 of 14

treat the claims as one within the list of exceptions if the pleaded facts seem to warrant.[62]

Further, under Alaska law, "there is no distinction between 'excessive force' and 'assault and battery' for purposes of the immunity statute."[63] Here, the factual allegations in the Amended Complaint and the evidence unambiguously show that the troopers acted with intent when deploying the Stinger Grenades in Plaintiff's vehicle.[64] The troopers did not accidentally set off the Stinger Grenades nor inadvertently toss the device into Plaintiff's vehicle; rather, they made a strategic decision to throw the Stinger Grenades into Plaintiff's vehicle in order to detain him. Plaintiff's only argument to support his negligence theory is that the troopers, in misunderstanding the fire risk associated with Stinger Grenades, did not intend to use "deadly force." In other words, Plaintiff argues that the troopers did not intend to cause the degree of harm they inflicted on Plaintiff. But under Alaska law, a person is liable for assault and battery if they intend to cause harmful contact and such contact results, even if the ultimate injury exceeds that intention.[65] For example, in *State v. Heisey*, plaintiff brought a claim that correctional officers "negligently used excessive force" when the officers slammed him into the floor.[66] The Alaska Supreme Court found

---

[62] *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1092 (Alaska 2012) (internal quotations omitted).
[63] *Id.* at 1091.
[64] Docket 6-4 ¶¶ 14–15, 38; Docket 50-2 at 6–10, 14–15; Docket 50-4 at 5–7.
[65] *Heisey*, 271 P.3d at 1092 n.47 (citing RESTATEMENT (SECOND) OF TORTS § 21 (1965)); *Nolte v. Mun. of Anchorage*, No. 3:07-CV-00211-TMB, 2010 WL 11519451, at *7 (D. Alaska Sept. 24, 2010) (quoting *Merrill v. Faltin*, 430 P.2d 913, 917 (Alaska 1967)) ("Under Alaskan law, '[i]f one acts intending to cause a harmful or offensive contact with the person of another, and if the latter is put in imminent apprehension of such a contact, and an offensive contact results, one is liable for an assault and battery even though he acted with no feeling of hostility or ill will or enmity toward the other.'").
[66] *Heisey*, 271 P.3d at 1092.

*Whaley v. State of Alaska, Dept. of Law*  Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment  Page 11
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 11 of 14

that Alaska Stat. § 09.50.250(3) barred the claim, explaining that "[t]he negligent application of too much force still implies that the alleged tort offenders intended to apply *some* degree of force, making the underlying action one for assault or battery."[67] Here, Plaintiff does not dispute that the troopers intended for the Stinger Grenades to cause some harmful contact with Plaintiff in order to effectuate his arrest.[68] As in *Heisey*, Plaintiff's argument that the trooper was negligently "operating under the premise that he was using non-deadly force" acknowledges that the trooper intended to use some force by deploying the grenades.[69] To wit, Plaintiff's Response predominantly cites to excessive force cases for the proposition that the troopers' conduct was illegal.[70] The Amended Complaint's strategic pleading cannot skirt the State's immunity for excessive force and assault and battery claims.[71]

---

[67] *Id.*
[68] Docket 6-4 ¶ 15 ("One of the Troopers threw a Stinger Grenade inside the plaintiff's vehicle while the plaintiff was inside."), ¶ 38 ("The Troopers knew or should have known that throwing a Stinger grenade toward a man inside a vehicle was likely to cause unreasonable harm."); Docket 50 at 3–4 (arguing that one trooper who threw the grenade did not realize it was a pyrotechnic device and one trooper who threw the grenade did not realize its use constituted deadly force against Plaintiff).
[69] Docket 50 at 4; Docket 6-4 ¶ 14.
[70] *See, e.g.*, Docket 50 at 5 ("There is no question that there is a clearly established right to be free from excessive force during arrest. *Russell v. Corporal Lee Virg–in*, 258 P.3d 795, 808 (Alaska 2011) citing *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).").
[71] *See also Est. of Tasi v. Mun. of Anchorage*, No. 3:13-cv-00234-SLG, 2016 WL 370694, at *6 (D. Alaska Jan. 28, 2016), *on reconsideration sub nom. Est. of Tasi by & through Taualo-Tasi v. Mun. of Anchorage*, No. 3:13-cv-00234-SLG, 2016 WL 10648441 (D. Alaska Mar. 16, 2016) (construing negligence claim as an excessive force claim where police officer shot plaintiff while effectuating an arrest); *Nolte v. Mun. of Anchorage*, No. 3:07-cv-00211-TMB, 2010 WL 11519451, at *7 (D. Alaska Sept. 24, 2010) (finding that officer acted intentionally when plaintiff asserted claim for negligence that officer failed "to use reasonable levels of force necessary to affect [sic] the apprehension and custody of plaintiff").

*Whaley v. State of Alaska, Dept. of Law*     Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment     Page 12
Case 4:21-cv-00006-JMK    Document 64    Filed 05/22/23    Page 12 of 14

Turning to Plaintiff's negligent training claim, under Alaska Stat. § 09.50.250, the State may be liable for harm caused by intentional torts provided that it "breached some independent duty that has a basis other than negligent supervision, training, or hiring of government employees."[72] For instance, the Alaska Supreme Court has found the State liable for an employee's assault when its relationship with the plaintiff gave rise to an independent duty to protect, such as with a child in need of aid or a prisoner in State custody.[73] Here, Plaintiff alleges no such relationship or independent duty. As discussed, the alleged "wrong" underlying Plaintiff's claim arises directly out of a state employee committing battery and assault.[74] Similarly, in *Heisey*, plaintiff's direct claim against the State for negligent training was barred by Alaska Stat. § 09.50.250(3) because the claim was "entirely dependent on the State's status as the correctional officers' employer."[75] Here, the State's liability is wholly dependent on the employment status of the troopers—if the troopers were not State employees, Plaintiff would have no cognizable action against the State. Because Plaintiff's negligent training claim "merely assert[s]

---

[72] *Dapo v. State*, 454 P.3d 171, 181 (Alaska 2019) (quoting *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 891 (Alaska 2006)).
[73] *See id*. at 182; *B.R. v. State, Dep't of Corr.*, 144 P.3d 431, 432 (Alaska 2006).
[74] *Kinegak v. State, Dep't of Corr.,* 129 P.3d 887, 892–93 (Alaska 2006) (finding Alaska Stat. § 09.50.250(3) barred negligent training claim against the State when state employee negligently maintained records because the "wrong" resulting from employee's negligence was intentional tort of false imprisonment); *see also Bifelt v. Alaska*, No. 4:18-cv-00017 JWS, 2020 WL 1046816, at *7 (D. Alaska Mar. 3, 2020), *aff'd*, 854 F. App'x 799 (9th Cir. 2021) (finding Alaska Stat. § 09.50.250(3) barred claim that State "grossly failed to train its Troopers in the fundamental law of arrest and use of force" because claim was dependent on tort offender's employment status and State had no independent duty of care to plaintiff when effectuating his arrest).
[75] *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1092–93 (Alaska 2012).

*Whaley v. State of Alaska, Dept. of Law*  Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment  Page 13
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 13 of 14

breaches of [the State's] duty to exercise due care in hiring, training, and supervisi[on]" of the intentional tortfeasor, it is barred by Alaska Stat. § 09.50.250(3).[76]

Plaintiff's Amended Complaint describes a tragic and avoidable injury. The evidence cited on summary judgment also suggests an alarming ignorance from the troopers and mismanagement of their encounter with Plaintiff. But Plaintiff chose to file suit directly against the State and chose to assert state law claims from which the State is immune. The claims fail as a matter of law.

## IV. CONCLUSION

Based on the preceding discussion, the motion for summary judgment at Docket 46 in **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED this 22nd day of May, 2022, at Anchorage, Alaska.

                                                                */s/ Joshua M. Kindred*
                                                                JOSHUA M. KINDRED
                                                            United States District Judge

---

[76] *B.R.*, 144 P.3d at 435.

*Whaley v. State of Alaska, Dept. of Law*                         Case No. 4:21-cv-00006-JMK
Order Re State of Alaska's Motion for Summary Judgment               Page 14
Case 4:21-cv-00006-JMK   Document 64   Filed 05/22/23   Page 14 of 14